UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Mary Picard ) | |
|     Plaintiff ) | Civil Action No. |
| ) |   1:08-cv-00279 |
| v. ) | |
| ) | |
| High Liner Foods (USA) Inc. ) | |
| ) | |
|     Defendant ) | |

### Plaintiff, Mary Picard's, Amended Complaint

NOW COMES the plaintiff, Mary Picard, of 354 Lincoln Avenue, Portsmouth, New Hampshire, and complains against High Liner Foods (USA) Incorporated, of 1 Highliner Avenue, Portsmouth, New Hampshire, as follows:

### PARTIES

1. Mary Picard ("Ms. Picard") is an individual who resides at 354 Lincoln Avenue, Portsmouth, New Hampshire.

2. High Liner Foods (USA) Incorporated ("High Liner-USA") is a corporation which does business at 1 Highliner Avenue, Portsmouth, New Hampshire.

3. High Liner-USA is believed to be owned and controlled by High Liner Foods Incorporated ("High Liner-Canada") of 100 Battery Point, Lunenburg, Nova Scotia, Canada.

### BACKGROUND FACTS

4. Ms. Picard was employed by High Liner-USA as of October 11, 2004.

5. Ms. Picard's initial employment was as "Human Resource Partner for Operations."

6. In November, 2004, Ms. Picard was asked by High Liner-USA to join its U.S. Operations team and was part of that senior leadership team throughout her employment.

7. Ms. Picard was one of the two most senior women employed as a salaried, professional employee by High Liner-USA.

8. Ms. Picard received a base salary, bonus, and other benefits as part of her wages and employment with High Liner-USA.

9. Ms. Picard received merit increases from High Liner-USA on March 28, 2005, March 26, 2006, and March 25, 2007, together with a promotion to grade 14 on January 1, 2008.

10. As of January 1, 2008, Ms. Picard's annual base salary was $98,093.00.

11. Prior to March 31, 2008, Ms. Picard's employment performance and record with High Liner-USA was excellent, with no performance issues or concerns ever expressed to Ms. Picard.

12. Prior to March 31, 2008, High Liner-USA established an employment practice or policy concerning the payment of severance wages, advance notice of termination of employment, and other benefits for male, salaried, professional employees who were similarly situated to Ms. Picard.

13. By letter dated March 31, 2008, High Liner-Canada (acting through Joanne Brown – V.P. of Human Resources) notified Ms. Picard that (in part):

   (a) her employment is terminated "from High Liner Foods (USA) as a result of the restructuring of our U.S. operations";

   (b) "your termination is effective immediately";

   (c) "We will pay to you all wages due to you through the end of the current pay period, April 11, 2008, within the time period required by law";

   (d) "We will provide you with Separation Payments, equivalent to your regular salary plus an amount equal to the prorated three year average of your bonus of $2,044.67 per week, less withholdings, for a period of 12 weeks from the Termination Date, March 31, 2008";

   (e) that other benefits would be due to her, with (c), (d), and (e) conditioned on

       signing the letter as an agreement.

14. By letter dated April 29, 2008, Ms. Picard notified Ms. Brown that (in part):

    (a) High Liner-USA had established a policy of providing severance pay to male salaried professional employees whose positions were similar to that of Ms. Picard for longer than the twelve (12) week period offered Ms. Picard.

    (b) High Liner-USA's severance pay policy had resulted in male salaried employees (with less tenure and job responsibilities) being paid far more than what was offered Ms. Picard.

    (c) High Liner-USA had also established a policy of giving an advance seven (7) month notification period prior to payment of the severance benefits.

    (d) She was "requesting a severance agreement that is consistent with past precedent and is fair and equitable in an effort to achieve a reasonable resolution."

15. Ms. Brown, on behalf of High Liner-USA and High Liner-Canada, responded to Ms. Picard's request to be "fair and equitable" by letter dated May 5, 2008, that (in part):

    (a) accused Ms. Picard of "wilfully and without authorization" giving severance offers to former employees;

    (b) accused Ms. Picard of participating in an "unauthorized bonus scheme to certain individuals in direct contravention of instructions from corporate management";

    (c) accused Ms. Picard of accepting "an unauthorized bonus."

16. Ms. Picard considered that the accusations being made against her by Ms. Brown (on behalf of High Liner-USA and High Liner-Canada) amounted to criminal activity and were criminal offenses.

17. None of the accusations made by Ms. Brown (on behalf of High Liner-USA and High Liner-Canada) were true.

18. By letter dated May 14, 2008, counsel for Ms. Picard informed Ms. Brown, High Liner-USA and High Liner-Canada that under New Hampshire law

- RSA 275:42 III – defines "wages";

- RSA 275:43 V – states that severance pay, whether "such benefits are a matter of employment practice or policy, or both, shall be considered wages pursuant to RSA 275:42 III";

- RSA 275:45 – "...the employer shall pay, without condition and within the time set by this subdivision, all wages, or parts thereof, conceded by him to be due..."

- RSA 275:44 I – "Whenever an employer discharges an employee, the employer shall pay the employee's wages in full within 72 hours";

- RSA 275:44 IV – "If an employer wilfully and without good cause fails to pay an employee wage...such employer shall be additionally liable to the employee for liquidated damages...";

- RSA 275:37 – "No employer shall discriminate in the payment of wages between the sexes..."

- RSA 275:56 – Every employer shall "provide such employee with a copy of all or part of such (personnel) file."

19. The letter of May 14, 2008, from counsel requested that High Liner-USA

    (a) "send to me (counsel for Ms. Picard) true and complete copies of Mary Picard's personnel file with your company, including any and all performance assessments by May 21, 2008" (with High Liner-USA being informed that the term "personnel file" included payroll records, internal evaluations, disciplinary documentation and performance evaluations, wherever maintained and an Authorization signed by Ms. Picard was included for that purpose);

    (b) "pay Ms. Picard the 'Separation Payments' and other benefits outlined in your letter of March 31, 2008, on or before May 21, 2008";

    (c) "urge you to reconsider the company's decision, as set forth in your letter of May 5, 2008, to reject the offer made by Ms. Picard in her letter of April 29, 2008."

20. The letter of May 14, 2008, also notified High Liner-USA that in the event a resolution was not made as soon as possible "Ms. Picard will not hesitate to enforce her legal rights, which will include requests for attorney's fees."

21. A second request for the complete personnel file and Separation Payments was made by

4

Ms. Picard's counsel to counsel for High Liner-USA on May 29, 2008.

22. By letter dated June 3, 2008, a copy of Ms. Picard's alleged personnel file was mailed to her counsel.

23. That Ms. Picard's performance reviews or performance assessments were not included in the file forwarded by High Liner-USA.

24. That no other severance payments have been made by High Liner-USA to Ms. Picard.

25. That Ms. Picard has been damaged by the conduct of High Liner-USA.

## COUNT I
## VIOLATION OF RSA 275:56 (PERSONNEL FILE)

26. RSA 275:56 requires that an employer such as High Liner-USA

> "upon request, provide [the] Employee with a copy of
> all or part of such [personnel] file."

27. The term "personnel file" is defined in the administrative code as

> "any personnel records created and maintained by an employer
> and pertaining to an employee including and not limited to
> employment applications, **internal evaluations**, **disciplinary
> documentation**, payroll records, injury reports and **performance
> assessments**, whether maintained in one or more locations, unless
> such records are exempt from disclosure under RSA 275:56, III
> or are otherwise privileged or confidential by law.  The term
> does not include recommendations, peer evaluations or notes
> not generated or created by the employer."

N.H. Admin. Lab.Code § 802.09.

28. Although requested on several occasions, High Liner-USA has not provided Ms. Picard with a complete copy of her personnel file with, at a minimum, there being no "internal evaluations, disciplinary documentation...and performance assessments" included with the file.

29. The failure of High Liner-USA to so provide a complete copy of the personnel file and

5

violate RSA 275:56 is knowing, deliberate, intentional and in bad faith.

30. Ms. Picard requests that this Court order High Liner-USA to provide her with a complete copy of her personnel file immediately.

31. Ms. Picard requests that this Court order High Liner-USA to pay her attorney's fees associated with the violation of RSA 275:56 which has necessitated (in part) this litigation.

### COUNT II
### VIOLATION OF RSA 275:44 AND 275:45
### WAGES TO BE PAID WITHIN 72 HOURS

32. All facts stated in this Petition are incorporated in this Count II.

33. RSA 275:43 V states that severance pay is considered to be "wages."

34. RSA 275:45 Unconditional Payment of Wages Conceded to be Due requires that "the employer shall pay...all wages, or parts thereof, conceded by him to be due..."

35. RSA 275:44 I requires that "the employer shall pay the employee's wages in full within 72 hours."

36. RSA 275:44 IV obligates High Liner-USA to be "additionally liable" to Ms. Picard and to pay Ms. Picard liquidated damages in the amount of double wages for its failure to pay her the full wages due within 72 hours.

37. That the failure of High Liner-USA to so pay Ms. Picard her wages pursuant to RSA 275:44 and RSA 275:45 was wilful, without good cause, knowing, deliberate, intentional and in bad faith.

38. That such failure of High Liner-USA has resulted in damages to Ms. Picard.

39. That pursuant to RSA 275:53 and otherwise the actions of High Liner-USA make it liable to pay all costs and attorney's fees incurred by Ms. Picard in this action.

40.   That Ms. Picard has been damaged by the conduct of High Liner-USA as aforesaid in an amount within the jurisdictional limits of this Court.

### COUNT III
### VIOLATION OF RSA 275:43
### FAILURE TO PAY SEVERANCE PAY AS WAGES

41.   All facts stated in this <u>Petition</u> are incorporated in this Count III.

42.   RSA 275:43 III states that severance pay, when "such benefits are a matter of employment practice or policy, or both, shall be considered wages pursuant to RSA 275:42 II when due."

43.   Prior to March 31, 2008, High Liner-USA established an employment practice or policy concerning the payment of severance wages, advance notice of termination of

employment, and other benefits for male, salaried, professional employees who were similarly situated to Ms. Picard.

44.   High Liner-USA has not paid to Ms. Picard the same severance pay as other male, professional, salaried, similarly situated employees that it was the employment practice or policy of High Liner-USA to pay.

45.   That such failure of High Liner-USA has resulted in damages to Ms. Picard.

46.   That the failure of High Liner-USA to so pay Ms. Picard her proper severance pay and benefits was knowing, deliberate, intentional and in bad faith.

47.   That pursuant to RSA 275:53 and otherwise the actions of High Liner-USA make it liable to pay all costs and attorney's fees incurred by Ms. Picard in this matter.

48.   That Ms. Picard has been damaged by the conduct of High Liner-USA as aforesaid in an

amount within the jurisdictional limits of this Court.

## COUNT IV
## VIOLATION OF RSA 275:37
## DISCRIMINATION

49. All facts stated in this Petition are incorporated in this Count V.

50. RSA 275:37 Equal Pay requires that

> "...no employer shall discriminate in the payment of wages as between sexes..."

51. High Liner-USA has discriminated in the payment of wages between Ms. Picard and male salaried professional employees who were similarly situated as Ms. Picard.

52. The wages paid to male salaried professional employees in the form of severance wages has been much higher than the severance wages paid or offered to be paid to Ms. Picard.

53. The variation between the severance wages paid by High Liner-USA to male salaried professional employees and those severance wages paid or offered to be paid to Ms. Picard is not justified by RSA 275:37 or otherwise.

54. That the discrimination against Ms. Picard as aforesaid is a violation of RSA 275:37.

55. That RSA 275:39 Liquidated Damages provides that High Liner-USA is liable to Ms. Picard in the amount of unpaid wages and "in an additional equal amount of liquidated damages" for a violation of RSA 275:37.

56. That the discrimination against Ms. Picard as aforesaid by High Liner-USA was knowing, deliberate, intentional and in bad faith.

57. That such discrimination has resulted in damages to Ms. Picard as aforesaid.

58. That the actions of High Liner-USA make it liable to pay costs and attorney's fees incurred by Ms. Picard in this action, pursuant to RSA 275:53 and otherwise.

59. That Ms. Picard has been damaged by the conduct of High Liner-USA as aforesaid in an amount within the jurisdictional limits of this Court.

## COUNT V
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

60. All facts stated in this Petition are incorporated in this Count VI.

61. High Liner-USA has a duty to avoid causing emotional distress that would cause physical injury to Ms. Picard.

62. By falsely accusing Ms. Picard of criminal activity, criminal conduct and the type of actions that it has, High Liner-USA has breached its said duty and created an unreasonable risk of causing emotional distress that would likely lead to physical injury.

63. That Ms. Picard, as a direct result of the breach of duty by High Liner-USA, has suffered a significant, painful and mental and emotional experience with lasting effects that has manifested itself in physical injuries.

64. That Ms. Picard claims damages against High Liner-USA in an amount within the jurisdictional limits of this Court.

65. That Ms. Picard claims attorney's fees as additional damages as the result of the knowing, deliberate, intentional and bad faith conduct of High Liner-USA.

66. That Ms. Picard has been damaged by the conduct of High Liner-USA as aforesaid in an amount within the jurisdictional limits of this Court.

## COUNT VI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

67. All facts stated in this Petition are incorporated in this Count VII.

68. That the actions of High Liner-USA in this action constitute extreme and outrageous

conduct.

69. Ms. Picard has been caused damage due to the extreme and outrageous conduct of High Liner-USA.

70. High Liner-USA is liable to Ms. Picard in damages for intentionally causing Ms. Picard emotional distress, based on the actions of High Liner-USA as set forth in this Petition.

71. Ms. Picard claims damages against High Liner-USA as a result of such conduct within the jurisdictional limits of this Court.

72. That Ms. Picard claims attorney's fees as the result of the knowing, intentional, deliberate and bad faith conduct of High Liner-USA.

## COUNT VII
## VIOLATION OF RSA 358-A

73  All facts stated in this Petition are incorporated in this Count VIII.

74. The actions of High Liner-USA are an unfair or deceptive act or practice in the conduct of commerce.

75. The actions of High Liner-USA, even to one "inured to the rough and tumble of the world of commerce" attains and surpasses a "level of rascality which raises eyebrows" (illegal activities, violation of state and federal statutes, gender discrimination, failure to provide personnel files when requested, etc.).

76. That the plaintiff herein is a "person injured" by the said conduct of High Liner-USA.

77. That the acts or practices of High Liner-USA were wilful and knowing violations of RSA 358-A.

78. That the damages to the plaintiff should include an award of a maximum of treble

damages, but not less than double damages, and attorney's fees pursuant to RSA 358-A:10.

79. That the plaintiff has been damaged by the conduct of High Liner-USA in an amount within the jurisdictional limits of this Court.

## EQUITY JURISDICTION

80. That Ms. Picard does not have an adequate remedy at law.

WHEREFORE, Ms. Picard prays as follows:

I.   PENDING A JURY TRIAL ON THE MERITS:

A.   A hearing be scheduled on the temporary relief requested by Ms. Picard.

B.   High Liner-USA be ordered to provide to Ms. Picard a complete copy of her personnel file in accordance with RSA 275:56.

C.   High Liner-USA be ordered to pay to Ms. Picard both the amount of severance wages which it admits is due to her in accordance with RSA 275:44 and 275:45.

D.   High Liner-USA be ordered to pay to Ms. Picard liquidated damages in accordance with RSA 275:44 IV in the amount of the severance wages deemed to be due her.

E.   High Liner-USA be ordered to pay to Ms. Picard attorney's fees and costs due to the conduct of High Liner-USA.

II.   AFTER A JURY TRIAL ON THE MERITS:

A.   High Liner-USA be ordered to pay damages and liberal enhanced damages to Ms. Picard pursuant to the claims made in Counts II, III, IV, V, VI, and VII above, including but not limited to liquidated and multiple damages.

B. High Liner-USA be ordered to pay attorney's fees and costs to Ms. Picard due to the conduct of High Liner-USA, RSA 275:53, and RSA 358-A:10.

C. For such other and further relief as may be just.

III. JURY TRIAL

A. The plaintiff demands a jury trial on all issues of fact.

                RESPECTFULLY SUBMITTED:

                MARY PICARD
                By her attorneys:

                BOYNTON, WALDRON, DOLEAC,
                WOODMAN & SCOTT, P.A.

Dated: July 23, 2008      By:  /s/Amy C. Mackin
                                    Amy C. Mackin, Bar # 17721
                                    Ralph Woodman, Bar # 2790
                                    82 Court Street, PO Box 418
                                    Portsmouth, NH 03802-0418
                                    (603) 436-4010

CERTIFICATE OF SERVICE

I hereby certify that a copy of Amended Complaint was electronically served through ECF, this 23rd day of July 2008 to Christopher Cole, Esq. and Karyl R. Martin, opposing counsels.

                /s/ Amy Mackin
                Amy Mackin